AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
2012 DEC -3 PM 11: 23
CLERK U.S. ...
SOUTHERN D...

BY _____ do _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No. |
| iPhone, Model A1332, seized from ) | |
| Howard Willie Carter II ) | |
| ) | **'12 MJ 4445** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ____Southern____ District of ____California____ *(identify the person or describe property to be searched and give its location)*:  See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:  See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___2252(a)___, and the application is based on these facts:  See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

STEPHEN B. OLSEN, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/30/12

*Judge's signature*

City and state: San Diego, CA     WILLIAM V. GALLO, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

iPhone, Model A1332, Cellular Phone, placed in FBI evidence with barcode E481387, belonging to Howard Willie Carter II, seized at the time of arrest of Howard Willie Carter II on October 17, 2012. This cellular phone is currently in possession of the Federal Bureau of Investigations Evidence Control Center in San Diego, California.

## ATTACHMENT B

## PROPERTY/ITEMS TO BE SEIZED

The evidence to be searched for and seized pertains to possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, in violation of Title 18, United States Code, §§ 2252(a) and 2252A, and is described as follows:

1.  Communications, records, or such as emails, text messages, photographs, audio files, videos, or location data:

    a.  tending to indicate efforts to possess, receive, and/or distribute images of minors engaged in sexually explicit conduct;

    b.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to prove the possession, receipt, and/or distribution of images of minors engaged in sexually explicit conduct;

    c.  tending to identify co-conspirators, criminal associates, or others involved in possessing, receiving, and/or distributing images of minors engaged in sexually explicit conduct;

    d.  tending to identify the user of, or persons with control over or access to, the subject phone; or

    e.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Stephen B. Olsen, being duly sworn, hereby state as follows:

### I. INTRODUCTION

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been so employed for over 13 years. I am currently assigned to the Joint Terrorism Task Force of the San Diego Field Office where I primarily investigate crimes concerning international terrorism.

2. My experience as an FBI Agent includes a thirteen week FBI new agents class during which I received instruction on various aspects of federal investigations. In addition to new agent training, I have received approximately 50 hours of training related to computer and internet crime, which included training related to the forensic analysis of computer related evidence. I have participated in a wide variety of criminal investigations, to include major drug trafficking organizations, fugitive apprehension, international terrorism, cyber crime, cyber espionage, and cyber terrorism. I have personally participated in the execution of search warrants involving the search and seizure of computer and cellular telephone equipment.

3. I make this affidavit in support of an application by the United States of America for the issuance of a warrant to search the iPhone, Model A1332, that was seized from Howard Willie Carter II, on October 17, 2012, at the time of his arrest, for the items described in Attachment B, which items constitute evidence, fruits, and instrumentalities of violations of federal computer crime laws, namely, Title 18, United States Code §§ 2252(a) and 2252A(a), which make it a crime to possess, receive, or distribute child pornography.

4. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## II. FACTS IN SUPPORT OF PROBABLE CAUSE

5. On August 16, 2012, FBI Special Agent Adduci was conducting surveillance in the vicinity of the apartment complex at 4119 Winona Avenue, San Diego, California. During that surveillance, he found an abandoned hard drive and computer in a community trash dumpster in the parking garage of the apartment complex. The computer, an HP laptop, was found in a black plastic trash bag inside of a white plastic garbage bag. A hard drive had been removed from the laptop and taped inside the black plastic bag. The abandoned hard drive was submitted to the San Diego Regional Computer Forensic Lab (RCFL) for analysis. RCFL personnel created a forensic image of the abandoned hard drive for examination.

6. During the course of the examination of the imaged hard drive, FBI agents attempted to determine the prior ownership of the hard drive. Agents discovered two resumes of Howard Carter II and numerous photographs and videos of Carter on the hard drive to lead them to believe that the computer belonged to and was abandoned by Carter. In several of the homemade videos, a male identified as Carter spoke into the camera.

7. The hard drive also contained evidence that the user had an Apple device that was being synced to the computer.

   a. The hard drive contained a registration file for a Mobile Me account listing the account holder and display name as "Howard Carter." Mobile Me was a service provided by Apple Computer until June 30, 2012.

   b. All graphical images found in the folder "Users\Hp\AppData\Roaming\Apple Computer\MobileSync\Backup" were reviewed. This folder is where images are downloaded when an Apple mobile device, such as an iPhone or iPad, is synced to the computer. Within this folder were hundreds of images, and many appeared to be Howard Willie Carter II based on a comparison to his Department of Motor Vehicle photograph. The images of Carter appeared to be "snap shot" type pictures taken by the owner using an Apple mobile device's camera.

8. During the forensic examination of the hard drive, over 1000 images and three video files containing child pornography were discovered. Two of these files are further described as follows:

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT   2

a. The image located at "Users/Hp/AppData/Local/Microsoft/Windows/Temporary Internet Files/Content.IE5/TK88IDS1/10[1].jpg" depicts a pre-pubescent female, assessed by affiant to be no older than five (5) years old, holding the erect penis and engaging in oral copulation of an adult male. This image was created and last accessed on August 11, 2012.

c. The video clip located at "Users/Hp/Desktop/22.avi" depicts an adult male engaging in vaginal sexual intercourse with a pre-pubescent female, assessed by affiant to be no older than 10 years old. This image was created and last accessed on August 12, 2012.

9. Additional videos, which had been taken by the user of the Apple mobile device and synced to the abandoned hard drive, were found. They were saved on the hard drive consistent with an Apple iPhone user using the iPhone's video camera to record the videos and then synching them to the computer hard drive. These video images included the following:

a. There are more than a dozen video clips in which the user appears to be video stalking women. In these images, the user follows women while focusing the camera on the buttocks of the different females and records video images of them.

b. In one video clip the user is following a young girl, assessed by affiant to be no older than 14 years old. While following and recording video, the user is making derogatory sexual comments while focusing the camera on the young girl's buttocks as she walks on a sidewalk in front of the user. The voice in the video sounds like the same voice (believed to be Carter's) that is heard in the videos discussed in paragraph 6, which were found on the hard drive in the sync folder.

c. There are several video clips in which the user, while riding on public transit and while in a convenience store, exposes his penis and proceeds to sexually gratify himself.

## Collection of Pornography

10. As a result of my training and experience in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the distribution and collection of child pornography:

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT    3

a. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, video tapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Furthermore, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Collectors of child pornography almost always possess and maintain any "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and video tapes for many years. "Child Erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

d. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence or in their vehicle, to enable the collector to view the collection, which is valued highly.

e. Child pornography collectors also may correspond with and/or meet others to share information and materials; are rarely able to completely destroy correspondence from other child pornography distributors/collectors; conceal correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT    4

f. Collectors of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g. Individuals involved in the trade of child pornography often use specialized software to conceal the existence of evidence and/or destroy said evidence. There are a variety of different programs that an individual can use to accomplish these objectives, many of which are free. Additionally, child pornographers have been known to store child pornography in unconventional locations on a computer. Often times these files and folders have been renamed in an attempt to mislead investigators.

h. Often times collectors of child pornography will download and store images and communications of children they know or with whom they have communicated. These images many not necessarily be pornographic or obscene in nature, however they are often used for their own sexual gratification.

i. Given the capabilities of an iPhone, a user can store images to be able to access them at any time. Additionally, the iPhone can be used to distribute images to other individuals through the internet.

11. On October 12, 2012, the Grand Jury indicted Howard Willie Carter II in a sealed indictment for receipt of images of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2), and possession of images of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B).

12. On October 17, 2012, Carter was arrested as he was approaching his residence at 4119 Winona Avenue, San Diego, California. When he was approached by agents, he had the subject iPhone (described in paragraph 3) in his hand, and he was instructed to drop it. The iPhone was then seized as evidence. After his arrest, he was read his Miranda rights, and he waived those rights and agreed to speak to FBI agents without an attorney present. During that interview, he was shown the iPhone that was seized from him at the time of arrest, and he confirmed it was his phone. Carter stated that he was using the iPhone to connect to the internet after he discarded his laptop.

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT    5

13. Based upon my experience and training, consultation with other law enforcement officers experienced in child pornography investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to child exploitation and the receipt, possession, production, advertisement, and transmission of child pornography activities of Carter, such as electronic mail (email) addresses, pictures, and other digital information are stored in the memory of the iPhone described herein.

### III. PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

14. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

15. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT    6

cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

16. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## VII.   CONCLUSION

17. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that the iPhone seized from Carter was used in the commission of a crime or contains evidence, fruits, and instrumentalities of violations of Title 18, United States Code, § 2252 and § 2252A.

18. Based upon my experience and training, consultation with other agents in child pornography investigations and the facts set forth herein, I know that the items to be seized set forth supra are likely to be found in the property to be searched described in Attachment B (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with the FBI, or another federal law enforcement agent specially trained in digital evidence recovery, to search the item described in Attachment A, and seize the items listed in Attachment B.

STEPHEN B. OLSEN
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me
this ___20th___ day of November, 2012

HONORABLE WILLIAM V. GALLO
United States Magistrate Judge

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT   7